**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                                           Case No. 05-33035-DHW
                                                                Chapter 11
PIKNIK PRODUCTS COMPANY, INC.,

     Debtor.
_____

CROUCH SUPPLY COMPANY,

     Plaintiff,

v.                                                              Adv. Proc. No. 06-03010-DHW

PIKNIK PRODUCTS COMPANY, INC.,

     Defendant,

WACHOVIA BANK, NA, successor by
merger to SouthTrust Bank,

     Intervenor.

## MEMORANDUM OPINION

Crouch Supply Company ("Crouch") filed this adversary proceeding against Piknik Products Company, Inc. ("Piknik") seeking a declaration of the respective rights of the parties in equipment called a "Juicy Juice System" located at Piknik's plant in Montgomery, Alabama. Crouch claims title to the property. Alternatively, Crouch contends that it has a lien on the property superior to other liens.

Wachovia Bank ("Wachovia") intervened and filed an answer to

the complaint (Doc. #6).[1] Piknik filed an answer to the complaint (Doc. #9), which was later amended (Doc. #14). Both Wachovia and Piknik generally deny the allegations of the complaint.

On May 10, 2006, Crouch and Wachovia filed cross motions for summary judgment (Doc. #16 and #17, respectively). Piknik filed a response joining the motion of Wachovia and opposing that of Crouch (Doc. #23). These motions for summary judgment are now before the court for decision.

## Jurisdiction

The court's jurisdiction in this adversary proceeding derives from 28 U.S.C. § 1334 and from the United States District Court for this district's general order referring title 11 matters to the Bankruptcy Court. Further, because this proceeding is one to determine the validity, extent, or priority of a lien, this is a core proceeding under 28 U.S.C. § 157(b)(2)(K) thereby extending this court's jurisdiction to the entry of a final judgment.

## Facts

On or about May 2, 2005, Crouch made a proposal to sell and install the Juicy Juice System at Piknik's Montgomery, Alabama facility. Crouch contends that Piknik signed and returned the proposal. Crouch, however, has lost the executed agreement. Piknik denies signing the proposal. *See* Piknik's Answer, ¶ 5.

Crouch attached an unexecuted copy of the proposal to its motion for summary judgment. The proposal provides, *inter alia*, 1) for the sale and installation of the Juicy Juice System for a total price of $369,865, exclusive of certain miscellaneous costs such as taxes,

---

[1] The court granted Wachovia's motion to intervene in this adversary proceeding by order entered January 26, 2006 (Doc. #7).

permits, and freight; 2) for a 35% down-payment; 3) for the seller's retention of title pending payment in full; and 4) for the contract to be governed and construed by the laws of the State of Texas.

On May 26, 2005, Piknik paid Crouch $129,452.75, which represented the 35% down-payment. *See* Plaintiff's Amended Complaint, Ex. 2.

The proposal implies a July 2005 projected delivery date. The majority of the system was delivered and bolted to the floor. Crouch contends that the system has not been fully installed and is not operational. The parties agree that the Juicy Juice System, while bolted to the flooring, is not a fixture and could be removed from Piknik's facility without harming the realty.

On September 23, 2005, Crouch filed an affidavit of lien in the probate court of Montgomery County, Alabama. *See* Crouch's Motion for Summary Judgment, Ex. 4.

Wachovia has a security interest in essentially all of Piknik's personal property including equipment and fixtures. Wachovia first perfected the security interest in 1995 by filing a UCC-1 financing statement with the Alabama Secretary of State. That filing remains continuous to date. *See* Evidentiary Submission, Ex. 1 ¶ 10.

Piknik filed a chapter 11 petition for relief in this court on September 29, 2005.

## Conclusions of Law

The standard for summary judgment established by Fed. R. Civ. Proc. 56 is made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. Proc. 7056. The rule provides in part:

The judgment sought shall be rendered forthwith if the

3

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. Proc. 56(c).

Summary judgment is appropriate when "there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).

In this case, the parties dispute whether Piknik executed the agreement. Crouch contends that Piknik not only signed the agreement but further admitted this fact by failing to respond timely to requests for admissions.[2] *See* Fed. R. Bankr. Proc. 36. This disputed fact, however, is not material because the legal result is unaffected. The court will consider the motions for summary judgment assuming that there was an executed written agreement between the parties, that the contract formed by that agreement is governed by Texas law, and that the contract provides for Crouch to retain title to the goods until fully paid.[3]

---

[2] Piknik filed an untimely response to the request for admissions denying that Piknik signed the agreement. The court has not resolved the issue whether the requests are deemed admitted. Wachovia contends that even if the requests are deemed admitted by the debtor, that admission is not binding on Wachovia.

[3] Wachovia argues that an unsigned agreement would violate not only the statute of frauds but the requirement that a security agreement be authenticated. *See* Ala. Code §§ 7-2-201(1) and 7-9A-203(b). Texas's version

4

At issue here are the respective rights of the parties in the Juicy Juice System. As stated above, Crouch claims title to the property. Alternatively, Crouch contends that it has a lien on the property superior to other liens, namely the lien of Wachovia. Crouch advances three arguments in support of these contentions.

First, Crouch claims title to the property under the following provision of the contract: "Seller retains title to the equipment . . until full payment is made . . . ." Because Crouch has not been paid in full, Crouch argues that Piknik has no interest in the property and that the property is not part of the bankruptcy estate. The court disagrees.

Texas law provides that a "retention or reservation by the seller of the title . . . in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." *Tex. Bus. & Com. Code Ann.* § 2.401(a) (2005). Therefore, in spite of the reservation of title language, Piknik has title to the property subject to the security interest of Crouch. When Piknik filed chapter 11, the property became part of Piknik's bankruptcy estate pursuant to 11 U.S.C. § 541. Crouch no longer has title to the property.

Next, Crouch contends that it has a purchase-money security interest ("PMSI") in the property with priority over Wachovia's competing security interest. Texas law accords priority to a PMSI as long as the PMSI is perfected within 20 days after the debtor "receives possession" of the collateral.[4] *Tex. Bus & Com. Code Ann.* § 9.324

---

of the Uniform Commercial Code contains similar provisions.

[4] Actually, Texas law dictates the application of Alabama law regarding perfection of a security interest in this equipment: "While collateral is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a possessory security interest in that collateral." *Tex. Bus & Com. Code Ann.* § 9.301(2) (2005). However, Alabama law regarding priority of a purchase-money security interest is similar to that of Texas. *See Ala. Code* § 7-9A-324(a)

5

(2001). It is undisputed that Crouch did not file a financing statement within 20 days after delivery of the Juicy Juice equipment.

However, Crouch contends that the time for perfection of its security interest has not yet run. Citing to the holding in *In re Master Services, Inc.*, 172 Fed. Appx. 697, 2006 WL 770494 (8th Cir 2006), Crouch argues that the debtor "receives possession" on the date that the equipment becomes fully operational, and that because installation of the Juicy Juice System is not complete, the time has not yet run for perfection of its security interest.

The Official Comments to § 9.324 aid the court in defining when a debtor receives possession of collateral. The Official Comment states:

> Normally, there will be no question when "the debtor receives possession of the collateral" for the purposes of subsection (a). However, sometimes a debtor buys goods and takes possession of them in stages, and then assembly and testing are completed (by the seller or debtor-buyer) at the debtor's location. Under those circumstances, the buyer "takes possession" within the meaning of subsection (a) when, after an inspection of the portion of the goods in the debtor's possession, it would be apparent to a potential lender to the debtor that the debtor has acquired an interest in the goods taken as a whole.

*Tex. Bus. & Com. Code Ann.* § 9.324 cmt. 3 (2002).

Here, the majority of the Juicy Juice System was delivered to Piknik's Montgomery, Alabama facility around July 2005. The equipment comprising the system was actually bolted to the facility floor. Under these circumstances, it is clear that a potential lender

---

(2001).

would conclude that Piknik had acquired an interest in the Juicy Juice System.

Crouch's reliance upon *Master Services* is misplaced. In that case, the PMSI creditor installed equipment at the buyer's facility, and the equipment was fully operational. The first payment, however, was not due until after the installation was complete. The seller argued that the debtor did not receive possession of the equipment until the date the first payment was due. In rejecting the seller's argument, the court did not make the extent of operative completeness a condition for possession under the Uniform Commercial Code. Instead, the court merely noted that the equipment in the case before it was fully operational. The court, however, made clear that the test for receipt of possession under § 9.324 is the impression of a potential lender regarding the debtor's interest in the property. *Master Services*, 172 Fed. Appx. at 700. Obviously, the fact that the equipment was fully operational would strengthen a prospective lender's impression that the buyer had an interest in the equipment. However, it is only a factor to be considered, and it is not the standard prescribed by the statute.

Finally, Crouch claims a materialman's or mechanic's lien in the Juicy Juice System arising under Texas and Alabama law.

Crouch claims a self-executing mechanic's or materialman's lien under Article 16, § 37 of the *Texas Constitution*. Crouch contends that such lien enjoys priority over prior recorded deeds of trusts if the property subject to the lien can be removed without damage to the realty.[5]

---

[5] This constitutional lien does not apply to chattels unless specially manufactured pursuant to the buyer's specifications: "We hold that the constitutional lien on manufactured chattels is available to the manufacturer only upon articles made especially for a purchaser pursuant to a special order and in accordance with the purchaser's plans or specifications." *First National Bank v. Whirlpool Corporation*, 517 S.W.2d 262, 268 (Tex. 1975).

7

However, this court is convinced that a mechanic's or materialman's lien created under Texas law applies only to real property situated in Texas and does not reach real property located in another jurisdiction. As stated by a district court in Texas,

> A materialman's lien is a creature of the law of the state where the real property, benefited by the materials, is situated and that law governs the mode of its operation. . . . Oklahoma law should thus apply to any agreement for the supply of materials which benefited real property in Oklahoma and likewise Texas law should apply to any such agreement which benefited real property in Texas.

*Nuclear Corp. of America v. Hale*, 355 F. Supp. 193, 196-97 (N.D. Tex. 1973) (internal citations omitted).

Crouch also claims a mechanic's and materialman's lien under Alabama's lien statutes. Crouch does not specify the statute under which it claims a lien, but two are implicated.

First, *Ala. Code* § 35-11-210 (1975) provides a lien in favor of a mechanic or materialman for work done to realty or for the enhancement of realty.[6] Crouch cannot claim under this statute

---

In the instant case, there is no evidence that the Juicy Juice System was specially manufactured.

[6] Section 35-11-210 provides in pertinent part as follows:

Every mechanic, person, firm, or corporation who shall do or perform any work, or labor upon, or furnish any material, fixture, engine, boiler, waste disposal services and equipment, or machinery for any building or improvement on land, or for repairing, altering, or beautifying the same, under or by virtue of any contract with the owner or proprietor thereof, or his or her agent, . . . upon complying with the provisions of this

8

because the work and materials that it supplied to Piknik did not benefit the realty.

Second, *Ala. Code* § 35-11-110 (1975) provides, *inter alia,* for a mechanic's lien favoring those who contribute labor or material to the production, manufacture, or repair of personal property. The statute, however, expressly provides that such lien is subordinate to any prior perfected security interest under Article 9 of the Uniform Commercial Code unless the prior perfected secured party authorized the contribution. Because Wachovia's properly perfected security interest under Article 9 predates Crouch's September 23, 2005 effort to create a mechanic's lien, Wachovia's lien enjoys priority under Alabama law.

## Conclusion

The result here appears harsh. This court sympathizes with Crouch. Crouch sold Piknik equipment worth more than $350,000 in May 2005 for which it was paid only $129,452.75. A mere four months later, Piknik filed a petition under chapter 11, and Crouch now finds itself in the position of an unsecured creditor with little hope of receiving any distribution on its claim. Yet, Crouch failed to properly perfect a lien as provided by law, and this court's sympathy must give way to that reality.

For these reasons the court finds that Wachovia's motion for summary judgment is due to be granted. For the same reasons Crouch's motion for summary judgment is due to be denied. Pursuant to Fed. R. Bankr. Proc. 9021 an order, consistent with this opinion, will enter separately.

---

> division, shall have a lien therefor on such building or improvements and on the land on which the same is situated, to the extent in ownership of all the right, title, and interest therein of the owner or proprietor . . .

9

Done this 3rd day of August, 2006.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Von G. Memory, Attorney for Debtor
   Clay M. Taylor, Attorney for Crouch Supply Company
   Jason D. Woodard, Attorney for Wachovia Bank

10